1  ROBERT E. OPERA -- State Bar No. 101182
   ropera@wcghlaw.com
2  ANDREW B. LEVIN – State Bar No. 290209
   alevin@wcghlaw.com
3  **WINTHROP COUCHOT**
   **GOLUBOW HOLLANDER, LLP**
4  660 Newport Center Drive, Suite 400
   Newport Beach, CA 92660
5  Telephone:  (949) 720-4100
   Facsimile:   (949) 720-4111
6
   [Proposed] General Insolvency Counsel for Debtor
7  and Debtor-in-Possession EarthOne Circuit Technologies Corporation

8                 **UNITED STATES BANKRUPTCY COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA**

10                        **SANTA ANA DIVISION**

11

12  In re:                                          | Case No. 8:17-bk-12521-CB

13  EARTHONE CIRCUIT TECHNOLOGIES             | Chapter 11 Proceeding
    CORPORATION,
14      A Delaware corporation,                    | **MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 363 AND 105(a) OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING THE DEBTOR'S RETENTION OF J. MICHAEL ISSA AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DOUG MOLYNEUX AND J. MICHAEL ISSA IN SUPPORT THEREOF**

15

16              Debtor and
                Debtor-in-Possession.

17

18

19

20

21

22                                                  | [No Hearing Requested Pursuant to Local Bankruptcy Rule 9013-1(o)]

23

24

25

26

27

28

1    EarthOne Circuit Technologies Corporation, the debtor and debtor-in-possession in the

2    above-captioned Chapter 11 case ("Debtor"), hereby moves ("Motion") this Court, pursuant to

3    Sections 363 and 105(a) of the Bankruptcy Code, for entry of an order authorizing the Debtor to

4    retain J. Michael Issa ("Mr. Issa") of GlassRatner Advisory & Capital Group, LLC

5    ("GlassRatner") as the Debtor's Chief Restructuring Officer ("CRO") pursuant to the provisions

6    of that engagement agreement ("Engagement Agreement") between the Debtor and GlassRatner

7    attached as Exhibit "1" to the Declaration of J. Michael Issa appended hereto ("Issa Declaration").

8    Good cause exists to authorize the Debtor to engage Mr. Issa as CRO. As set forth

9    hereinbelow, Mr. Issa has extensive experience in Chapter 11 cases and in the sale of financially-

10    distressed businesses. The Debtor needs the assistance of Mr. Issa in the administration of this

11    Chapter 11 case. Furthermore, the Debtor needs the assistance of Mr. Issa with respect to the

12    Debtor's efforts to sell substantially of the Debtor's assets in this Chapter 11 case. Mr. Issa's

13    experience and expertise with respect to the sale of financially-distressed businesses will facilitate

14    the Debtor's efforts to achieve a successful sale of its assets in this case. The independent

15    oversight that Mr. Issa brings to this case will help to ensure that the sale proceedings will be

16    conducted in a fair manner and on a level playing field for all prospective bidders in this case.

17    As set forth hereinbelow, the Debtor's proposed terms for compensating Mr. Issa for his

18    services as CRO are fair and will not be a burden on the estate.

19    This Motion is made and based upon the above representations and allegations, the

20    Memorandum of Points and Authorities, the Declaration of Doug Molyneux ("Molyneux

21    Declaration") and the Issa Declaration attached hereto, the papers, pleadings and other documents

22    on file in this case, and upon any additional evidence, both oral and documentary, which may be

23    presented to the Court at or before the time of the hearing on this Motion, if any should be held.

24    **WHEREFORE,** the Debtor respectfully requests that this Court enter an order granting to

25    the Debtor the following relief:

26    1.    Granting this Motion;

27    2.    Entering an order, pursuant to Sections 363 and 105(a) of the Bankruptcy Code,

28    authorizing the Debtor to retain Mr. Issa as CRO pursuant to the terms and conditions of the

1    Engagement Agreement (Exhibit "1" to the Issa Declaration), effective as of June 21, 2017; and

2        3.      Granting to the Debtor and to GlassRatner such other and further relief as the Court

3    deems just and appropriate.

4    DATED:  July 12, 2017                    **WINTHROP COUCHOT**
                                              **GOLUBOW HOLLANDER, LLP**
5

6
                                             By:*/s/ Robert E. Opera*_____
7                                                 Robert E. Opera
                                                  Andrew B. Levin
8                                            [Proposed] General Insolvency Counsel for
                                             Debtor and Debtor-in-Possession
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.

3

### STATEMENT OF FACTS

4       The Debtor was formed on August 4, 2010.  The Debtor initially was formed as a

5  Wyoming corporation.  Since July 2012, the Debtor has been a corporation duly organized and

6  existing under the laws of the State of Delaware.

7       The Debtor previously had headquarters in Carlsbad, California and in Newbury Park,

8  California.  Those headquarters were closed.  The Debtor now is located in Irvine, California.

9       The Debtor was founded to develop and market "eSurface"™ technology, patent-protected

10  intellectual property for the manufacture of printed circuit boards and other electronic components.

11  The Debtor believes that the eSurface technology provides substantial direct process cost savings

12  over current manufacturing technology, and almost completely eliminates toxic waste generated by

13  conventional manufacturing methods.  The Debtor believes that the eSurface technology is

14  potentially a transformative technology and will provide to printed circuit board and other

15  electronics manufacturing unprecedented efficiencies and capabilities, with lower costs, allowing

16  companies to build electronics less expensively, smaller and with more functionality.

17       The Debtor does not manufacture products.  Rather, the Debtor licenses its technology to

18  manufacturing companies, particularly in the printed circuit board industry

19       While the Debtor's initial business strategy focused on marketing to the printed circuit

20  board manufacturing industry, the Debtor believes that the eSurface technology can be used in a

21  variety of market segments and applications, including communications, automotive,

22  military/aerospace, solar energy production and medical products.

23       The Debtor has raised from investors approximately $16.5 million, including

24  approximately $4,885,500 in secured debt, in order to develop and exploit its eSurface technology.

25  Despite such funding, the Debtor has been unable to commercialize successfully its technology.

26  The Debtor has not been able to generate any significant revenues from the licensing of its

27  technology.  The Debtor has not been able to achieve profitability.

28

MAINDOCS-#229793-v1-EarthOne_Motion_to_Employ_Issa_as_CRO

1    In 2017, the Debtor ran out of funding for its operations  By reason of the Debtor's cash

2  flow problems, the Debtor was required to cut back its business operations, including terminating

3  its former corporate headquarters.  As of the Debtor's Chapter 11 filing, the Debtor had only a

4  small office located in Irvine, California, and had no employees, except for the Debtor's Corporate

5  Secretary, Doug Molyneux.

6    By reason of the Debtor's financial difficulties and the substantial amount of debt

7  accumulated by the Debtor, the Debtor has been unable to obtain any significant amount of

8  additional funding for its operations.  The Debtor believes that potential investors will be unwilling

9  to invest additional funds in the Debtor given the Debtor's current debt structure.  The Debtor has

10  determined that, in light of the Debtor's lack of cash or access to adequate funding for its business

11  and the Debtor's substantial debt burdens, the Debtor is not now a viable business and cannot

12  reorganize its financial affairs.  The Debtor has determined, therefore, to pursue expeditiously a

13  sale of substantially all of the Debtor's assets, in Chapter 11 proceedings, in order to preserve the

14  value thereof for the Debtor's creditors.

15    Prior to the Debtor's Chapter 11 filing, the Debtor retained Mr. Issa of GlassRatner to

16  obtain his assistance with respect to the Chapter 11 case that would be filed by the Debtor, and, in

17  particular, with respect to sale proceedings that would be pursued by the Debtor.

18    On June 21, 2017 ("Petition Date"), the Debtor filed a voluntary petition for relief under

19  Chapter 11 of the Bankruptcy Code.  The Debtor is operating and managing its business as a

20  debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

21  **II.**

22  **RELIEF REQUESTED**

23    By this Motion, the Debtor requests the entry of an order, pursuant to Sections 363 and

24  105(a) of the Bankruptcy Code, authorizing the Debtor to retain Mr. Issa as CRO in accordance

25  with the provisions of the Engagement Agreement (Exhibit "1" to the Issa Declaration).

26    The relief requested herein is necessary to a successful resolution of the Debtor's

27  bankruptcy case.  The Debtor requires the services of an experienced CRO to supervise the

28

1  administration of the Debtor's Chapter 11 case and, in particular, to be in charge of the sale

2  proceedings in this case.

3       As the proposed CRO, Mr. Issa will act as the most senior officer of the Debtor, and

4  effectively will serve as a chief executive officer of the Debtor.  Mr. Issa will act under the

5  direction, control and guidance of the Board of Directors of the Debtor.  As the proposed CRO,

6  Mr. Issa will manage the Debtor's business, will be responsible for supervising the administration

7  of the Debtor's Chapter 11 case and will be responsible for all aspects of the sale proceedings in

8  the Debtor's case.  Mr. Issa's services will facilitate greatly the Debtor's efforts to achieve a

9  successful sale process in this case, for the benefit of the Debtor's creditors.

10                                        **III.**

11                          **QUALIFICATIONS OF MR. ISSA**

12       GlassRatner is a financial advisory services firm.   GlassRatner has extensive experience

13  and expertise in Chapter 11 proceedings.  Consistently ranked as one of the most active bankruptcy

14  consulting firms in the nation, GlassRatner is regularly employed as a court-appointed receiver,

15  trustee, liquidating agent, plan administrator or other fiduciary.  GlassRatner employs

16  approximately 95 professionals in offices in eight (8) major U.S. cities.

17       Mr. Issa is a Certified Public Accountant (inactive), a FINRA licensee, and he has more

18  than 30 years' experience in bankruptcy consulting, debt and financial restructuring, forensic

19  accounting, acquisition due diligence, litigation support, and sell-side M&A.  Mr. Issa has been the

20  lead professional on numerous high-profile and complex engagements, including engagements

21  providing financial restructuring and reorganization services to companies in Chapter 11 cases,

22  companies in out-of-court restructurings, and to creditors of companies in Chapter 11 cases.

23  Mr. Issa has assisted in the sale of assets pursuant to Section 363 of the Bankruptcy Code on

24  numerous occasions.

25       Mr. Issa has served as a chief restructuring officer in a number of Chapter 11 cases.[1]

26  Mr. Issa has served as a court-appointed liquidating trustee and as a Chapter 11 trustee.  Mr. Issa

27

28  [1]  From about May 1, 2015 through about December 9, 2016, Mr. Issa served as chief restructuring officer of Chapter
11 debtor, American Spectrum Realty, Inc. ("ASRI"), in Case No. 8:15-bk-10721-SC.  From and after the effective
date of a Chapter 11 plan confirmed in ASRI's case, Mr. Issa has served as Liquidating Trustee of ASRI.

1    has extensive experience providing crisis management and financial restructuring services for

2    operating company and real estate clients.  Mr. Issa has substantial experience and knowledge

3    regarding restructuring of complex loan transactions and disposition of operating companies and

4    real estate projects.  Mr. Issa personally has managed several billion dollars of debt restructurings

5    on behalf of clients.  Mr. Issa is a two time winner of category awards in Middle Market Deal of

6    the Year competitions (2005 and 2013).  A true and correct copy of Mr. Issa's resume is attached

7    as Exhibit "2" to the Issa Declaration.

8        Since being retained by the Debtor, Mr. Issa has acquired substantial knowledge of the

9    Debtor's financial affairs and business.  Mr. Issa is in the process of assisting the Debtor to

10   effectuate a sale of substantially all of the Debtor's assets.    In his capacity as proposed CRO,

11   Mr. Issa has provided and will continue to provide independent oversight over the Debtor and the

12   Debtor's operations and the Debtor's efforts to sell its assets.  Mr. Issa's services are necessary to

13   the administration of the Debtor's case and to the maximizing of the value of the Debtor's assets

14   for the benefit of the creditors of the Debtor's estate.  Accordingly, the Debtor believes that the

15   retention of Mr. Issa as CRO is in the best interests of the Debtor's estate.

16                                                       **IV.**

17                                **<u>SERVICES TO BE PROVIDED BY THE CRO</u>**

18        By this Motion, the Debtor seeks an order authorizing the Debtor to retain Mr. Issa as CRO

19   in accordance with the terms of the Engagement Agreement.  As set forth in the Engagement

20   Agreement, Mr. Issa will provide, among others, the following services to the Debtor:

21        (1)    Manage the business and financial affairs of the Debtor;

22        (2)    Supervise the administration of the Debtor's Chapter 11 case, including the

23               preparation of the Debtor's Schedules of Assets and Liabilities and the financial

24               reporting required by the Office of the United States Trustee ("U.S. Trustee");

25        (3)    Review claims asserted against the Debtor;

26        (4)    Handle all aspects of the sale proceedings in the Debtor's case, including the

27               following:  marketing of the Debtor's assets; coordinating diligence investigations

28               by any potential bidder for the Debtor's assets; negotiations with any potential

bidder for the Debtor's assets; evaluating any bid made for the Debtor's assets; conducting an auction for the sale of the Debtor's assets; and selecting, subject to the approval of the Court, the successful bid(s) for the Debtor's assets;

(5)    If appropriate, develop possible restructuring plans for the Debtor or strategic alternatives for maximizing the enterprise value of the Debtor's business and determine which plan or alternative is appropriate to implement under the circumstances of the Debtor's Chapter 11 case;

(6)    Review and evaluate pleadings, financial reports and other documents filed by creditors or parties-in-interest in the Debtor's Chapter 11 case;

(7)    Appear in any proceedings or hearings in this Court, as appropriate;

(8)    Assist the Debtor in the negotiation, formulation, confirmation and implementation of a Chapter 11 plan, as appropriate;

(9)    Coordinate with the Debtor's counsel, and assist the Debtor's counsel, with respect to preparation of pleadings for proceedings in the Debtor's case;

(10)    Communicate with creditors, the Official Committee of Unsecured Creditors appointed in the Debtor's case ("Committee") and with other parties-in-interest in the Debtor's case; and

(11)    Perform the services typical of a CRO in a Chapter 11 case, and such other services as may be mutually agreed upon by the Debtor and GlassRatner.

The Debtor and GlassRatner have agreed that GlassRatner will provide to the Debtor the services of Mr. Issa as CRO. No other professional of GlassRatner will perform any services for the Debtor, without further order of the Court authorizing the employment of such professional.

The services listed above are vital to the efficient administration of the Debtor's Chapter 11 case, to the success of sale proceedings which the Debtor is pursuing in this Chapter 11 case, and, ultimately, to a successful resolution of this case for the Debtor's creditors. For the reasons described herein, the Debtor believes that Mr. Issa is well qualified to perform these services, and, accordingly, that this Court should authorize the Debtor to retain Mr. Issa, as CRO, to perform these services for the Debtor.

# V.

## **PROPOSED COMPENSATION OF THE CRO**

Pursuant to the Engagement Agreement, the Debtor and GlassRatner have agreed to the following compensation for Mr. Issa to act as CRO in this Chapter 11 case.

(1)    Monthly Fee.  The Debtor has agreed to pay to GlassRatner a monthly, non-refundable advisory fee of $10,000 for Mr. Issa's services as CRO (the "Monthly Fees").[2]

(2)    Reimbursement of Expenses.  GlassRatner will be reimbursed by the Debtor for any reasonable out-of-pocket expenses that Mr. Issa incurs in connection with his services as CRO, such as reasonable travel expenses, computer research, messenger and telephone charges.

(3)    Fee Upon Conclusion of Sale Process.  As set forth in the Issa Declaration, GlassRatner requested that the Debtor pay to GlassRatner, for Mr. Issa's services as CRO, a Monthly Fee in excess of $10,000.  By reason of the Debtor's cash flow difficulties, however, the Debtor was not in a position to pay to Glass Ratner a Monthly Fee in excess of $10,000.  As an accommodation to the Debtor, GlassRatner agreed to accept a Monthly Fee of $10,000 for Mr. Issa's services, and the Debtor and GlassRatner agreed that, upon the closing of a sale or sales of all or substantially all of the Debtor's assets (but, in any event, a sale of intellectual property rights and interests of the Debtor), the Debtor will pay to GlassRatner an additional payment for Mr. Issa's services as CRO in the amount of $20,000 ("Final Payment").

Mr. Issa is being employed as CRO in the ordinary course of the Debtor's business pursuant to Section 363 of the Bankruptcy Code.  Mr. Issa is <u>not</u> being employed as a "professional" under Section 327 of the Bankruptcy Code.  Accordingly, GlassRatner will not be submitting fee applications pursuant to Sections 330 or 331 of the Bankruptcy Code.  Moreover, since GlassRatner will be receiving, as and for Mr. Issa's compensation in this case, the $10,000 flat-fee Monthly Fees and the $20,000 flat-fee Final Payment, the Debtor requests that Mr. Issa be

---

[2]   The Debtor paid to Mr. Issa, prior to the Petition Date, a $30,000 retainer payment, to account for the first three months' Monthly Fees in this case.

1   excused from keeping track of his time by means of billing statements in this case, and from any

2   need to file any reporting with respect to his fees.

3         Notwithstanding the foregoing, if GlassRatner desires to obtain reimbursement for any

4   costs that Mr. Issa incurs on behalf of the Debtor, GlassRatner will file and serve a notice of its

5   request for reimbursement of such costs ("Cost Notice"). The Cost Notice will be served upon the

6   Debtor, the U.S. Trustee, those parties who request special notice in the Debtor's case, and upon

7   any counsel for the Committee. If no objection to a Cost Notice is filed and served within ten (10)

8   days after service of the Cost Notice, the Debtor will be authorized to pay to GlassRatner the

9   amount of the costs represented by the Cost Notice, without further notice, hearing or order of the

10  Court and without the need for any fee application to be filed by GlassRatner in connection

11  therewith. On the other hand, if a written objection to a Cost Notice is filed timely by a party-in-

12  interest, the Debtor will refrain from paying to GlassRatner the disputed costs until the objection

13  has been resolved by the Court. Notwithstanding any objection to a Cost Notice, GlassRatner may

14  be paid any undisputed amount of costs represented by a Cost Notice.

15        The Debtor believes that the proposed compensation structure is fair and very reasonable in

16  light of industry practice, market rates both in and out of Chapter 11 proceedings, the amount of

17  time that Mr. Issa has spent and will spend rendering services as CRO to the Debtor, and

18  Mr. Issa's experience and expertise in Chapter 11 cases.

19                                        **VI.**

20        **DISINTERESTEDNESS OF GLASSRATNER AND MR. ISSA**

21        Although the Debtor does not propose to retain GlassRatner and Mr. Issa under

22  Section 327 of the Bankruptcy Code, GlassRatner has nonetheless performed a computerized

23  check with respect to conflicts in this case. To the best of GlassRatner's knowledge, GlassRatner

24  has no material conflicts in this case, and holds no interest adverse to the estate. Neither Mr. Issa,

25  GlassRatner, nor any of GlassRatner's principals, members, employees or affiliates have any

26  connection with the Debtor, its creditors, the United States Trustee or any other party with an

27  actual or potential interest in the Debtor's case or their respective attorneys or accountants, except

28  as set forth in the Issa Declaration. By the Issa Declaration, Mr. Issa provides full and complete

1   disclosure in order to demonstrate that GlassRatner and he satisfy all requirements that would be

2   imposed by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure if Mr. Issa were

3   to be employed in this case.

4          Since the Debtor is a fairly sizeable enterprise with numerous creditors and other business

5   relationships, GlassRatner is unable to state with certainty that every client relationship or other

6   material connection with the Debtor's case has been disclosed in the Issa Declaration.  In this

7   regard, if GlassRatner discovers additional information that requires disclosure, GlassRatner will

8   file a supplemental disclosure with the Court.

9          GlassRatner has not been retained to assist any person or entity other than the Debtor on

10  matters relating to, or in connection with, the Debtor's case. If this Court approves the Debtor's

11  proposed retention of Mr. Issa as CRO in this case, GlassRatner will not accept any engagement or

12  perform any services for any person or entity other than the Debtor with respect to the Debtor's

13  case.  GlassRatner will, however, continue to provide professional services to, and engage in

14  commercial or professional relationships with, any persons or entities that may be creditors of the

15  Debtor or parties-in-interest in the Debtor's case, provided that such services do not relate to, or

16  have any connection with, the Debtor's case.

17         As of the Petition Date, the Debtor was not indebted to GlassRatner.  GlassRatner believes

18  that it is a "disinterested person" as defined in Section 101(14) of the Bankruptcy Code.

19                                              **VII.**

20                 **THE ENGAGEMENT AGREEMENT SHOULD BE APPROVED**

21         **A.    The Court Has Authority to Approve the Debtor's Engagement Agreement**

22                 **with GlassRatner.**

23         Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor-in-possession

24  "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business,

25  property of the estate." 11 U.S.C. § 363(b).  Under applicable case law in this and other circuits, if

26  a debtor's proposed use of its assets pursuant to Section 363(b) of the Bankruptcy Code represents

27  a reasonable business judgment on part of the debtor, such use should be approved. *See e.g., Myers*

28  *v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In*

MAINDOCS-#229793-v1-EarthOne_Motion_to_Employ_Issa_as_CRO

1 | *re Schipper*), 933 F.3d 513, 515 (7th Cir. 1991)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386,

2 | 390 (6th Cir. 1986); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063,

3 | 1070 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del.

4 | 1999); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (courts have

5 | applied the "sound business purpose" test to evaluate motions brought pursuant to Section 363(b));

6 | *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van*

7 | *Gorkom*, 488 A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is a 'presumption that in

8 | making a business decision the directors of a corporation acted on an informed basis, in good faith

9 | and in the honest belief that the actions were in the best interests of the company.'").

10 | Bankruptcy courts have analyzed the propriety of a debtor's employment of corporate

11 | restructuring officers, advisors and professionals under Section 363 on numerous occasions and

12 | have determined it is an appropriate exercise of the debtor's business judgment to employ a

13 | restructuring professional in this manner. *See In re Westcliff Medical Laboratories, Inc.*, Case No.

14 | 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In re Fatburger Restaurants of California, Inc., et al.*,

15 | Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); *In re Fairfield Residential LLC*, Case No.

16 | 09-14378 (Bankr. D. Del Jan 13, 2010); *In re Motor Coach Industries International, Inc.*, Case No.

17 | 08-12136 (Bankr. D. Del Oct. 15, 2008) (approving retention of chief restructuring officer and

18 | crisis managers); *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (Bankr. D. Del June 26,

19 | 2008); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del May 28, 2008); *In re*

20 | *Hoop Holdings, LLC*, Case No. 08-10544 (BLS) (Bankr. D. Del Apr. 22, 2008); *In re Leiner*

21 | *Health Products, Inc.*, Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 8, 2008); *In re TOUSA, Inc.*,

22 | Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); *In re American Home Mortgage Holdings*,

23 | *Inc.*, Case No. 07-11047 (Bankr. D. Del. Sept. 5, 2007); *In re Calpine Corp.*, Case No. 05-60200

24 | (Bankr. S.D.N.Y. Jan 17, 2007).

25 | Pursuant to Section 363(b), a debtor may employ a professional to act as its chief

26 | restructuring officer, interim corporate officer or crisis manager. *See In re Tokheim Corp.*, Case

27 | No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003). The retention of interim corporate officers

28 | and other temporary employees is proper under Section 363 of the Bankruptcy Code. Numerous

1    courts have authorized retention of officers utilizing Section 363 of the Bankruptcy Code. *See In*

2    *re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In*

3    *re Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16,

4    2011); *In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del Jan. 13, 2010); *In re*

5    *The Holliston Mill, Inc.*, Case No. 07-10687 (MFW) (Bankr. D. Del. June 6, 2007); *In re Sea*

6    *Containers Ltd.*, Case No. 06-11156 (KJC) (Bankr. D. Del. May 8, 2007); *In re Adva-Lite, Inc.*,

7    Case No. 07-10264 (KJC) (Bankr. D. Del. Mar. 16, 2007); *In re Global Home Products, LLC*,

8    Case No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006); *In re World Health Alternatives, Inc.*,

9    Case No. 06-10166 (PJW) (Bankr. D. Del. Mar. 15, 2006).

10        Additionally, the Court's general equitable powers, codified in Section 105(a) of the

11    Bankruptcy Code, provide authority for the relief requested herein.  Section 105(a) of the

12    Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary

13    to carry out the provisions of [the Bankruptcy Code.]" *See* 11 U.S.C. § 105(a).  *See also United*

14    *States v. Energy Resources Co.*, 495 U.S.545, 549 (1990); *In re Continental Airlines*, 203 F.3d

15    203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically

16    enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out

17    provisions of the Bankruptcy Code."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants*

18    *Comm.*, 2005 WL 435207, *14 (D.N.J. Feb. 25, 2005) (reciting the power of the bankruptcy court

19    to "… issue any order … that is necessary or appropriate to carry out the provisions of … [title

20    11]").

21        **B.**    <u>**Authorizing the Debtor to Retain Mr. Issa as CRO is in the Best Interests of**</u>

22    <u>**the Estate.**</u>

23        The terms and conditions of the Engagement Agreement were negotiated by the Debtor and

24    GlassRatner at arm's length and in good faith.  The Debtor submits that the Debtor's retention of

25    Mr. Issa as CRO is a sound exercise of its business judgment and satisfies Section 363 of the

26    Bankruptcy Code.  Mr. Issa has extensive experience and expertise as a chief restructuring officer

27    and as an advisor for troubled companies.  Moreover, the Debtor believes that Mr. Issa's services

28    are necessary and essential to the administration of the Debtor's case and to the Debtor's ability to

1   maximize the value of the Debtor's assets pursuant to sale proceedings in this case, for the benefit

2   of the Debtor's creditors.  In light of the foregoing, the Debtor believes that the Debtor's retention

3   of Mr. Issa as CRO is appropriate and in the best interests of the Debtor and its creditors.

4        **C.        Retention of Mr. Issa Is Critical to a Successful Resolution of this Case.**

5        Denying the relief requested herein would deprive the Debtor of the assistance of a highly

6   qualified CRO and would impair the interests of the Debtor's creditors.  Mr. Issa has substantial

7   experience and expertise in the sale of financially-distressed businesses.  Mr. Issa's leading the

8   Debtor's efforts to sell substantially all of the Debtor's assets will facilitate the effectuation of

9   efficient and effective sale proceedings and will enhance the prospects for a successful resolution

10  of this case for the benefit of creditors of the Debtor.

11       The Debtor's retention of Mr. Issa pursuant to the terms of the Engagement Agreement will

12  benefit greatly the Debtor and the Debtor's creditors.  The Debtor has only one employee, the

13  Debtor's Corporate Secretary, Doug Molyneux.  Mr. Molyneux has no experience in Chapter 11

14  proceedings or in the sale of a financially-distressed business.  The Debtor needs the experience

15  and expertise of Mr. Issa to supervise the administration of the Debtor's Chapter 11 case and to

16  lead the efforts that will be made in this case to effectuate a successful sale of substantially all of

17  the Debtor's assets.

18       Mr. Issa already has acquired substantial knowledge of the Debtor's business, and has

19  commenced preparation for the marketing of the Debtor's assets.  If the Court declines to authorize

20  the Debtor to retain Mr. Issa, there will be significant delay in the sale proceedings in this case, to

21  the substantial detriment of the Debtor's creditors.  The Debtor likely would be required to engage

22  a new chief restructuring officer or other officer to administer the Debtor's case and to be

23  responsible for the sale proceedings in the Debtor's case.  The Debtor's need to engage a new chief

24  restructuring officer or other officer in this case would take substantial time, both in terms of

25  finding and engaging a suitable individual and in bringing such individual "up to speed."  Given

26  the Debtor's lack of cash or funding for its operations, time is of the essence in this case and the

27  Debtor has only a brief time frame within which the Debtor can effectuate sale proceedings in this

28

1    case. Moreover, the Debtor may lack resources adequate to engage a suitable replacement in this

2    case.

3          Mr. Issa is clearly qualified to serve as CRO in this case. Furthermore, the terms of the

4    Engagement Agreement are fair. Mr. Issa's proposed compensation in this case -- a $10,000

5    Monthly Fee and the $20,000 Final Payment -- are relatively modest, particularly for an individual

6    with Mr. Issa's extensive experience and expertise. Accordingly, the Debtor's decision to enter

7    into the Engagement Agreement reflects an exercise of the Debtor's sound business judgment.

8          Based upon the foregoing, the Court should authorize the Debtor to retain Mr. Issa as CRO

9    in accordance with the terms of the Engagement Agreement.

10                                              **VIII.**

11                          **CAUSE EXISTS TO WAIVE THE STAY**

12                          **IMPOSED UNDER RULE 6004(h) OF THE**

13                          **FEDERAL RULES OF BANKRUPTCY PROCEDURE**

14          Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[a]n order authorizing the use, sale, or

15    lease of property other than cash collateral is stayed until the expiration of 14 days after entry of

16    the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Debtor respectfully

17    submits that, to the extent that Rule 6004(h) applies to the Debtor's proposed retention of Mr. Issa

18    as CRO in this case, cause exists to waive the 14-day stay imposed by Rule 6004(h). Given the

19    Debtor's cash flow difficulties, the Debtor needs to effectuate expeditiously the sale proceedings in

20    this case. A 14-day stay of an order authorizing the Debtor's retention of Mr. Issa as CRO will

21    serve only to delay, unnecessarily, the sale proceedings in this case, and thereby impair the

22    Debtor's efforts to effectuate a successful sale for the benefit of the Debtor's creditors.

23                                              **IX.**

24          **NOTICE OF THE MOTION IS APPROPRIATE, AND NO FURTHER HEARING IN**

25    **RESPECT OF THE MOTION IS REQUIRED, UNLESS SUCH HEARING IS ORDERED**

26          **BY THIS COURT OR SPECIFICALLY REQUESTED BY A PARTY-IN-INTEREST**

27          Notice of the relief requested by this Motion has been provided to all creditors and parties-

28    in-interest in this case pursuant to Bankruptcy Rule 2002. Creditors and other parties-in-interest

1  have been afforded an opportunity to object to this Motion and to request a hearing on this

2  Motion, should they object to the relief requested herein.  In accordance with the provisions of

3  Rule 9013-1(o) of the Local Bankruptcy Rules, absent an objection to this Motion, this Court can

4  and should approve this Motion without any hearing thereon.

5  **X.**

6  **CONCLUSION**

7         Based upon the foregoing, the Debtor respectfully submits that good cause exists for this

8  Court to enter an order granting to the Debtor the relief requested herein and such other and further

9  relief as the Court may deem just and proper.

10  DATED:  July 12, 2017                    **WINTHROP COUCHOT**

                                       **GOLUBOW HOLLANDER, LLP**

11

12

                                    By:___*/s/ Robert E. Opera*_____

13                                          Robert E. Opera

                                        Andrew B. Levin

14                                          [Proposed] General Insolvency Counsel for

                                        Debtor and Debtor-in-Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# DECLARATION OF DOUG MOLYNEUX

I, Doug Molyneux, declare and state as follows:

1.      I am the Corporate Secretary of EarthOne Circuit Technologies Corporation, the debtor and debtor-in-possession in the above-captioned Chapter 11 case ("Debtor").  The matters set forth herein are within my own personal knowledge, and, if called upon as a witness, I could and would testify competently thereto.

2.      I submit this Declaration in support of the Debtor's Motion for Entry of an Order, Pursuant to Sections 363 and 105(a) of the Bankruptcy Code, Authorizing and Approving the Debtor's Retention of J. Michael Issa as Chief Restructuring Officer of the Debtor ("Motion").[3] Pursuant to the Motion, the Debtor seeks an order, pursuant to Section 363 and 105(a) of the Bankruptcy Code, authorizing the Debtor to retain Mr. J. Michael Issa ("Mr. Issa") as CRO pursuant to the terms and conditions of the engagement agreement (the "Engagement Agreement"), by and between the Debtor and GlassRatner Advisory and Capital Group, LLC ("GlassRatner"), effective as of June 21, 2017.  A true and correct copy of the Engagement Agreement is attached as Exhibit "1" to the Declaration of J. Michael Issa, filed in support of the Motion.

3.      In connection with my performing my duties as Corporate Secretary of the Debtor, I have acquired substantial knowledge of all material aspects of the Debtor's financial affairs, including the Debtor's financial reporting.

4.      The Debtor was formed on August 4, 2010.  The Debtor initially was formed as a Wyoming corporation.  Since July 2012, the Debtor has been a corporation duly organized and existing under the laws of the State of Delaware.

5.      The Debtor was founded to develop and market "eSurface"™ technology, patent-protected intellectual property for the manufacture of printed circuit boards and other electronic components.  The Debtor believes that the eSurface technology provides substantial direct process cost savings over current manufacturing technology, and almost completely eliminates toxic waste

---

[3] Capitalized terms not otherwise defined herein will have the same definitions ascribed to them in the Motion.

MAINDOCS-#229793-v1-EarthOne_Motion_to_Employ_Issa_as_CRO

1   generated by conventional manufacturing methods.  The Debtor believes that the eSurface

2   technology is potentially a transformative technology and will provide to printed circuit board and

3   other electronics manufacturing unprecedented efficiencies and capabilities, with lower costs,

4   allowing companies to build electronics less expensively, smaller and with more functionality.

5       6.      The Debtor does not manufacture products.  Rather, the Debtor licenses its

6   technology to manufacturing companies, particularly in the printed circuit board industry.

7       7.      While the Debtor's initial business strategy focused on marketing to the printed

8   circuit board manufacturing industry, the Debtor believes that the eSurface technology can be used

9   in a variety of market segments and applications, including communications, automotive,

10  military/aerospace, solar energy production and medical products.

11      8.      I, currently, am the Debtor's only employee.

12      9.      The Debtor has raised from investors approximately $16.5 million, including

13  approximately $4,885,500 in secured debt, in order to develop and exploit its eSurface technology.

14  Despite such funding, the Debtor has been unable to commercialize successfully its technology.

15  The Debtor has not been able to generate any significant revenues from the licensing of its

16  technology.  The Debtor has not been able to achieve profitability.

17      10.     In 2017, the Debtor ran out of funding for its operations  By reason of the Debtor's

18  cash flow problems, the Debtor was required to cut back its business operations, including

19  terminating its former corporate headquarters.  As of the Debtor's Chapter 11 filing, the Debtor

20  had only a small office located in Irvine, California, and had no employees, except for me.

21      11.     By reason of the Debtor's financial difficulties and the substantial amount of debt

22  accumulated by the Debtor, the Debtor has been unable to obtain any significant amount of

23  additional funding for its operations.  The Debtor believes that potential investors will be unwilling

24  to invest additional funds in the Debtor given the Debtor's current debt structure.  The Debtor has

25  determined that, in light of the Debtor's lack of cash or access to adequate funding for its business

26  and the Debtor's substantial debt burdens, the Debtor is not now a viable business and cannot

27  reorganize its financial affairs.  The Debtor has determined, therefore, to pursue expeditiously a

28

MAINDOCS-#229793-v1-EarthOne_Motion_to_Employ_Issa_as_CRO

1   sale of substantially all of the Debtor's assets, in Chapter 11 proceedings, in order to preserve the

2   value thereof for the Debtor's creditors.

3       12.     On June 21, 2017 ("Petition Date"), the Debtor filed a voluntary petition for relief

4   under Chapter 11 of the Bankruptcy Code.  The Debtor is operating and managing its business as a

5   debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6       13.     Prior to the Debtor's Chapter 11 filing, the Debtor retained Mr. Issa of GlassRatner

7   to obtain his assistance with respect to the Chapter 11 case that would be filed by the Debtor, and,

8   in particular, with respect to sale proceedings that would be pursued by the Debtor.

9       14.     On June 21, 2017 ("Petition Date"), the Debtor filed a voluntary petition for relief

10  under Chapter 11 of the Bankruptcy Code.  The Debtor is operating and managing its business as a

11  debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

12      15.     The Debtor requires the services of an experienced CRO to supervise the

13  administration of the Debtor's Chapter 11 case and, in particular, to be in charge of the sale

14  proceedings in this case.

15      16.     The Debtor and GlassRatner have agreed that GlassRatner will provide to the

16  Debtor the services of Mr. Issa as CRO.  No other professional of GlassRatner will perform any

17  services for the Debtor, without further order of the Court authorizing the employment of such

18  professional.

19      17.     The Debtor believes that the compensation structure proposed in the Motion is fair

20  and very reasonable in light of industry practice, market rates both in and out of Chapter 11

21  proceedings, the amount of time that Mr. Issa has spent and will spend rendering services as CRO

22  to the Debtor, and Mr. Issa's experience and expertise in Chapter 11 cases.

23      18.     The terms and conditions of the Engagement Agreement were negotiated by the

24  Debtor and GlassRatner at arm's length and in good faith.  The Debtor submits that the retention

25  and employment of GlassRatner and Mr. Issa is a sound exercise of its business judgment and

26  satisfies Section 363 of the Bankruptcy Code.

27

28

1    19.    The Debtor believes that Mr. Issa's services are necessary and essential to the

2   administration of the Debtor's case and to the Debtor's ability to maximize the value of the

3   Debtor's assets pursuant to sale proceedings in this case, for the benefit of the Debtor's creditors.

4   Executed this 12th day of July 2017 at Irvine, California.



Doug Molyneux

MAINDOCS-#229793-v1-EarthOne_Motion_to_Employ_Issa_as_CRO.DOCX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF J. MICHAEL ISSA

I, J. Michael Issa, declare and state as follows:

1.      The matters set forth herein are within my own personal knowledge, and, if called upon as a witness, I could and would competently testify thereto.

2.      I submit this Declaration in support of the Debtor's Motion for Entry of an Order, Pursuant to Sections 363 and 105(a) of the Bankruptcy Code, Authorizing and Approving the Debtor's Retention of J. Michael Issa as Chief Restructuring Officer of the Debtor ("Motion").[4] Pursuant to the Motion, the Debtor seeks an order approving the engagement agreement (the "Engagement Agreement"), by and between the Debtor and GlassRatner Advisory & Capital Group, LLC ("GlassRatner"), by which GlassRatner will provide to the Debtor my services as CRO.  A true and correct copy of the Engagement Agreement is attached hereto as Exhibit "1" and is incorporated herein by the reference.

3.      GlassRatner is a financial advisory services firm.   GlassRatner has extensive experience and expertise in Chapter 11 proceedings.  Consistently ranked as one of the most active bankruptcy consulting firms in the nation, GlassRatner is regularly employed as a court-appointed receiver, trustee, liquidating agent, plan administrator or other fiduciary.  GlassRatner employs approximately 95 professionals in offices in eight (8) major U.S. cities.

4.      I am a Certified Public Accountant (inactive), I am a FINRA licensee, and I have more than 30 years' experience in bankruptcy consulting, debt and financial restructuring, forensic accounting, acquisition due diligence, litigation support, and sell-side M&A.  I have been the lead professional on numerous high-profile and complex engagements, including engagements providing financial restructuring and reorganization services to companies in Chapter 11 cases and to companies in out-of-court restructurings, and to creditors of companies in Chapter 11 cases.  I have assisted in the sale of assets pursuant to Section 363 of the Bankruptcy Code on numerous occasions.

---

[4] Capitalized terms not otherwise defined herein will have the same definitions ascribed to them in the Motion.

MAINDOCS-#229793-v1-EarthOne_Motion_to_Employ_Issa_as_CRO

5. I have served as a chief restructuring officer in a number of Chapter 11 cases.[5] I have served as a court-appointed liquidating trustee and as a Chapter 11 trustee. I have extensive experience providing crisis management and financial restructuring services for operating company and real estate clients. I have substantial experience and knowledge regarding restructuring of complex loan transactions and disposition of operating companies and real estate projects. I personally have managed several billion dollars of debt restructurings on behalf of clients. I am a two time winner of category awards in Middle Market Deal of the Year competitions (2005 and 2013). A true and correct copy of my resume is attached hereto as Exhibit "2" and is incorporated herein by this reference.

6. Since being retained by the Debtor, I have acquired substantial knowledge of the Debtor's financial affairs and business. I am in the process of assisting the Debtor to effectuate a sale of substantially all of the Debtor's assets. In my capacity as proposed CRO, I have provided and will continue to provide independent oversight over the Debtor and the Debtor's operations and the Debtor's efforts to sell its assets.

7. As set forth in the Engagement Agreement, I will provide, among others, the following services to the Debtor:

    a. Manage the business and financial affairs of the Debtor;

    b. Supervise the administration of the Debtor's Chapter 11 case, including the preparation of the Debtor's Schedules of Assets and Liabilities and the financial reporting required by the Office of the United States Trustee ("U.S. Trustee");

    c. Review claims asserted against the Debtor;

    d. Handle all aspects of the sale proceedings in the Debtor's case, including the following: marketing of the Debtor's assets; coordinating diligence investigations by any potential bidder for the Debtor's assets; negotiations with any potential bidder for the Debtor's assets; evaluating any bid made

---

[5] From about May 1, 2015 through about December 9, 2016, I served as chief restructuring officer of Chapter 11 debtor, American Spectrum Realty, Inc. ("ASRI"), in Case No. 8:15-bk-10721-SC. From and after the effective date of a Chapter 11 plan confirmed in ASRI's case, I have served as Liquidating Trustee of ASRI.

1       for the Debtor's assets; conducting an auction for the sale of the Debtor's

2       assets; and selecting, subject to the approval of the Court, the successful

3       bid(s) for the Debtor's assets;

4   e.  If appropriate, develop possible restructuring plans for the Debtor or

5       strategic alternatives for maximizing the enterprise value of the Debtor's

6       business and determine which plan or alternative is appropriate to

7       implement under the circumstances of the Debtor's Chapter 11 case;

8   f.  Review and evaluate pleadings, financial reports and other documents filed

9       by creditors or parties-in-interest in the Debtor's Chapter 11 case;

10   g.  Appear in any proceedings or hearings in this Court, as appropriate;

11   h.  Assist the Debtor in the negotiation, formulation, confirmation and

12       implementation of a Chapter 11 plan, as appropriate;

13   i.  Coordinate with the Debtor's counsel, and assist the Debtor's counsel, with

14       respect to preparation of pleadings for proceedings in the Debtor's case;

15   j.  Communicate with creditors, the Official Committee of Unsecured

16       Creditors appointed in the Debtor's case ("Committee") and with other

17       parties-in-interest in the Debtor's case; and

18   k.  Perform the services typical of a CRO in a Chapter 11 case, and such other

19       services as may be mutually agreed upon by the Debtor and GlassRatner.

20  8.  The Debtor and GlassRatner have agreed that GlassRatner will provide to the

21 Debtor my services as CRO.  No other professional of GlassRatner will perform any services for

22 the Debtor, without further order of the Court authorizing the employment of such professional.

23  9.  The Debtor and GlassRatner have agreed to the proposed compensation and

24 payment structure summarized below and set forth in detail in the Engagement contract (the "Fee

25 Structure"):

26

27

28

a.    <u>Monthly Fee</u>.  The Debtor has agreed to pay to GlassRatner a monthly, non-refundable advisory fee of $10,000 for my services as CRO (the "Monthly Fees"). [6]

b.    <u>Reimbursement of Expenses</u>.  GlassRatner will be reimbursed by the Debtor for any reasonable out-of-pocket expenses that I incur in connection with my services as CRO, such as reasonable travel expenses, computer research, messenger and telephone charges.

c.    <u>Fee Upon Conclusion of Sale Process</u>.  GlassRatner requested that the Debtor pay to GlassRatner, for my services as CRO, a Monthly Fee in excess of $10,000.  By reason of the Debtor's cash flow difficulties, however, the Debtor was not in a position to pay to Glass Ratner a Monthly Fee in excess of $10,000.  As an accommodation to the Debtor, GlassRatner agreed to accept a Monthly Fee of $10,000 for my services, and the Debtor and GlassRatner agreed that, upon the closing of a sale or sales of all or substantially all of the Debtor's assets (but, in any event, a sale of intellectual property rights and interests of the Debtor), the Debtor will pay to GlassRatner an additional payment for my services as CRO in the amount of $20,000 ("Final Payment").

10.    If GlassRatner desires to obtain reimbursement for any costs that I incur on behalf of the Debtor, GlassRatner will file and serve a notice of its request for reimbursement of such costs ("Cost Notice").  The Cost Notice will be served upon the Debtor, the U.S. Trustee, those parties who request special notice in the Debtor's case, and upon any counsel for the Committee. If no objection to a Cost Notice is filed and served within ten (10) days after service of the Cost Notice, the Debtor will be authorized to pay to GlassRatner the amount of the costs represented by the Cost Notice, without further notice, hearing or order of the Court and without the need for any fee application to be filed by GlassRatner in connection therewith.  On the other hand, if a written

---

[6]  The Debtor paid to me, prior to the Petition Date, a $30,000 retainer payment, to account for the first three months' Monthly Fees in this case.

1  objection to a Cost Notice is filed timely by a party-in-interest, the Debtor will refrain from paying

2  to GlassRatner the disputed costs until the objection has been resolved by the Court.

3  Notwithstanding any objection to a Cost Notice, GlassRatner may be paid any undisputed amount

4  of costs represented by a Cost Notice.

5       11.    GlassRatner was owed no amount by the Debtor as of the Petition Date.

6       12.    GlassRatner has conducted a computerized conflicts check with respect to the

7  Debtor's 20 largest unsecured creditors and the Debtor's secured creditors.  The conflicts check

8  indicates that GlassRatner has never performed services for any of such creditors.

9       13.    To the best of GlassRatner's knowledge, neither GlassRatner nor any of its

10  professionals (i) was a creditor, an equity security holder, or an insider of the Debtor as of the

11  Petition Date, or (ii) is or was, within two (2) years before the Petition Date, a director, officer or

12  employee of the Debtor.

13       14.    GlassRatner believes that it does not hold or represent any interest materially

14  adverse to the interest of the estate or of any class of creditors or equity security holders by reason

15  of any direct or indirect relationship to, connection with or interest in the Debtor or for any other

16  reason.  I believe that GlassRatner has no conflict that would impair my ability to perform properly

17  services as CRO for the Debtor.

18       15.    Except as set forth immediately below, to the best of GlassRatner's knowledge,

19  GlassRatner has no connection with any creditor of the Debtor or with any other party-in-interest in

20  the Debtor's case.

21       a.    Subject to the approval of the Court, the Debtor has employed Winthrop

22       Couchot Golubow Hollander, LLP ("WCGH") as the Debtor's general insolvency counsel

23       in the Debtor's case.  Professionals at GlassRatner and I have had and continue to have

24       professional, working and/or social relationships with attorneys at WCGH, including

25       Robert E. Opera of WCGH.  From time to time, GlassRatner has referred work to, or has

26       been referred work by, attorneys at WCGH or attorneys who worked for Winthrop Couchot

27       Professional Corporation ("Winthrop Couchot").

28

b.    I served as chief restructuring officer for ASRI, the Chapter 11 debtor in

Case No. 8:15-bk-10721-SC, and, from and after the effective date of a confirmed Chapter

11 plan in that case, I have served as Liquidating Trustee in that case.  Winthrop Couchot

represented ASRI, and WCGH continues to represent me as Liquidating Trustee for ASRI.

c.    GlassRatner and/or professionals of GlassRatner may have had and may

have business dealings or other involvement with creditors of the Debtor, but, to the best of

GlassRatner's knowledge, GlassRatner never has performed any services for such creditors

with respect to the Debtor.

d.    Professionals at GlassRatner may have worked in cases with or against, or

may have referred business to, or have been referred business by, law firms that may be

creditors in this case.  Professionals at GlassRatner may have social relationships with

individuals at certain of such law firms.

e.    Professionals at GlassRatner may have spouses, significant others or

relatives who have had, or may have, relationships with professionals or other entities that

may be creditors or that otherwise may have interests adverse to the interests of the Debtor

in this case.  GlassRatner's policies forbid disclosure of confidential information to any

person or entity outside of GlassRatner.

16.    The Debtor paid to GlassRatner GlassRatner's $30,000 pre-petition retainer in this

case.  It is my understanding that, since about August 31, 2016, BY Equities, LLC ("BYE") has

provided to the Debtor funding to enable the Debtor to pay its accruing expenses, including payroll

and other operating expenses, and that the funds that the Debtor used to pay the pre-petition

retainer to GlassRatner may have derived from funding provided to the Debtor by BYE.

GlassRatner will perform no services for BYE or any principals of BYE in connection with the

Debtor's case.

17.    I acknowledge that, as proposed CRO for the Debtor, I will have a fiduciary duty to

act solely in the best interests of the Debtor's estate and the Debtor's creditors.  If this Court

authorizes the Debtor to retain me as CRO in this case, I will use my best efforts to attempt to

1  ensure that the Debtor's case is administered in the best interests of the Debtor's creditors, and free

2  of any conflicts adverse to the interests of creditors.

3       18.    Based upon the foregoing, GlassRatner believes that it has no material conflicts in

4  this case, and that it is a "disinterested person," as defined in Section 101(14) of the Bankruptcy

5  Code.

6       19.    The Debtor is a fairly sizeable enterprise with numerous creditors and other

7  business relationships.  GlassRatner is unable to state with certainty that every client relationship or

8  other material connection with the Debtor's case has been disclosed in this Declaration.  If

9  GlassRatner discovers additional information that requires disclosure, GlassRatner will file a

10  supplemental disclosure with the Court.

11       20.    If this Court approves my proposed retention as CRO for the Debtor in this case,

12  GlassRatner will not accept any engagement or perform any services for any person or entity other

13  than the Debtor with respect to the Debtor's case.  However, GlassRatner will continue to provide

14  professional services to, and engage in commercial or professional relationships with, any persons

15  or entities that may be creditors of the Debtor or parties-in-interest in the Debtor's case, provided

16  that such services do not relate to, or have any connection with, the Debtor's case.

17       21.    GlassRatner has not agreed to share with any person or entity any compensation

18  received in the Debtor's case, except as among the members, principals and employees of

19  GlassRatner.

20       22.    To the best of GlassRatner's knowledge, GlassRatner does not have any connection

21  with the United States Trustee, anyone employed in the Office of the United States Trustee, or any

22  United States bankruptcy judge or district judge, for the Central District of California, with the

23  following exception.  A GlassRatner senior managing director, Mr. Brad Smith, is married to the

24  Hon. Sheri Bluebond.

25       23.    GlassRatner has not received any promises as to payment or compensation in

26  connection with this Chapter 11 case other than as disclosed herein.

27

28

1    24.    It is my belief that the terms and conditions of the Engagement Agreement were

2    negotiated by GlassRatner and the Debtor at arm's length and in good faith and are very fair to the

3    Debtor and its creditors.

4    25.    In the event that the Debtor requests that GlassRatner assume additional or different

5    officer positions for the Debtor, provide financial advisory services to the Debtor, or the Debtor

6    seeks to modify materially the functions that I am to perform as CRO for the Debtor, a motion to

7    modify GlassRatner's retention will be filed by the Debtor.

8    26.    No principal, employee or independent contractor of GlassRatner will serve as a

9    director of the Debtor while I am rendering services as CRO to the Debtor.

10    27.    I recognize that, as CRO, I will act under the direction, control and guidance of the

11    Board of Directors of the Debtor, and I will serve at the pleasure of the Board of Directors.

12    28.    As CRO of the Debtor, I will not be engaged on a full-time basis.  While I will

13    continue to work on other engagements, I believe that none of my other current engagements poses

14    any conflict with respect to my serving as CRO of the Debtor, and I will not accept any new

15    engagement that would create a conflict for me in connection with the Debtor's case or put me in a

16    position adverse to the interests of the Debtor and the Debtor's creditors.

17    29.    I am not aware of any claim that has been asserted against GlassRatner on account

18    of the services that I rendered to the Debtor prior to the Petition Date.

19    30.    Pursuant to the Engagement Agreement, the Debtor is required to indemnify

20    GlassRatner and me.  This indemnification will be only on the same terms that the Debtor provides

21    to other officers and directors under its corporate bylaws and applicable state law, along with

22    insurance coverage under any D&O policy maintained by the Debtor.  There will be no other

23    indemnification provided to GlassRatner or to me.

24    31.    For a period of three (3) years after the conclusion of the Debtor's retention of

25    GlassRatner in this case, GlassRatner will not make any investments in the Debtor.

26    ///

27

28

1    I declare under penalty of perjury under the laws of the State of California and the United

2  States of America that the foregoing is true and correct to the best of my knowledge.

3    Executed this _11_ th day of July 2017 at Irvine, California.

4

5    _____

6                                           J. Michael Issa

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1



June 21, 2017

TO:        Doug Molyneux
           Managing Director of Business Affairs &
           Investor Relations/Company Secretary
           3321 Grande Vista Drive
           Newbury Park, CA 91320

FROM:      J. Michael Issa, Principal

RE:        Engagement of GlassRatner Advisory & Capital Group, LLC as the Chief
           Restructuring Officer for EarthOne Circuit Technologies Corporation (the
           "Company" or "Debtor")
           Central District of California Case No. 8:17-bk-12521-CB.

Dear Mr. Molyneux:

This letter confirms and sets forth the terms and conditions of the engagement between
GlassRatner Advisory & Capital Group, LLC ("GlassRatner") and Officer for EarthOne Circuit
Technologies Corporation, including the scope of the services to be performed and the basis of
compensation for those services. It is understood by the Parties that this agreement is subject
to approval of the Bankruptcy Court for the Central District of California ("Bankruptcy Court").

1.    Description of Services

      a.    Officers. In connection with this engagement, GlassRatner shall make
            available to the Company Mike Issa to serve as the Chief Restructuring
            Officer of the Company (the "CRO").

      b.    Duties and Powers.

            (i)    The CRO shall manage the business and financial affairs of the
                   Debtor.

            (ii)   The CRO's scope of work in the case shall be to preside over the
                   solicitation of the raising of capital, the potential sale of the assets
                   of the Debtor, and/or the preparation and confirmation of the
                   Debtor's Plan of Organization, and such other plans as may
                   maximize the enterprise value of the Debtor. With respect to any
                   sale of the assets of the Debtor, the CRO will handle all aspects of

the sale proceeds in the Debtor's case, including the following: marketing of the Debtor's assets; coordinating diligence investigations by any potential bidder for the Debtor's assets; negotiations with any potential bidder for the Debtor's assets; evaluating any bid made for the Debtor's assets; conducting an auction for the sale of the Debtor's assets; and selecting, subject to the approval of the Bankruptcy Court, the successful bid(s) for the Debtor's assets.

(iii)    The CRO shall supervise the administration of the Chapter 11 case including preparation of the various schedules and reporting required by the Office of the United States Trustee.

(iv)    The CRO shall review claims asserted against the Debtor.

(v)    The CRO shall review and evaluate pleadings, financial reports and other documents filed by creditors or parties-in-interest in the Debtor's Chapter 11 case.

(vi)    The CRO shall appear in any proceedings or hearings in the Bankruptcy Court in the Debtor's Chapter 11 case, as appropriate.

(vii)    The CRO shall assist the Debtor in the negotiation, formulation, confirmation and implementation of a Chapter 11 plan, as appropriate.

(viii)    The CRO shall coordinate with Debtor's counsel and assist Debtor's counsel with respect to various pleadings as requested.

(ix)    The CRO shall communicate with creditors; the Official Committee of Unsecured Creditors, and with other parties-in-interest in the case.

(x)    The CRO shall manage the affairs of the Debtor and perform the typical duties of a CRO, and such other services as may be mutually agreed by the Parties.

c.    <u>Reporting</u>.   The CRO shall report to the Board of Directors of the Company.

d.    <u>Employment by GlassRatner</u>.  The CRO will continue to be employed by GlassRatner and while rendering services to the Company will continue to work with other personnel at GlassRatner in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement.  With respect to the Company, however, the CRO shall operate pursuant to the terms of this Agreement and GlassRatner shall have no liability to the Company for any acts or omissions of such officers.

e.    <u>Projections; Reliance; Limitation of Duties</u>.  You understand that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements.  In addition, the CRO will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements.  Neither the CRO nor GlassRatner makes any representation

or guarantee that an appropriate restructuring proposal or strategic alternative can be formulated for the Company, that any restructuring proposal or strategic alternative selected by GlassRatner and the CRO will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Company or, if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents.

2.    <u>Compensation</u>

    a.    GlassRatner will be paid by the Company for the services of the CRO at a flat rate of $10,000 per month with a final payment of $20,000 at the earlier of the consummation of a sale or liquidity event or at Plan Confirmation.

    b.    In addition, GlassRatner will be reimbursed by the Company for the reasonable out-of-pocket expenses of the CRO, and if applicable and agreed, other GlassRatner personnel, incurred in connection with this assignment, such as reasonable out-of-town travel, reasonable out-of-town lodging, duplications, computer research, messenger and telephone charges. In addition, GlassRatner shall be reimbursed by the Company for the reasonable fees and expenses of its counsel incurred in connection with the preparation, negotiation, enforcement and approval of this Agreement. All fees and expenses due to GlassRatner will be billed on a monthly basis.

    c.    The Parties agree that the bankruptcy court shall retain final jurisdiction over all fees payable to GlassRatner in this case.

3.    <u>Term</u>

The engagement will commence as of the date of Mr. Issa's approval as CRO June 21, 2017.

4.    <u>No Audit, Duty to Update</u>

It is understood that the CRO and GlassRatner are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Company. The CRO and GlassRatner are under no obligation to update data submitted to them or review any other areas.

5.    <u>No Third Party Beneficiary</u>.

The Company acknowledges that all advice (written or oral) given by GlassRatner to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board of Directors and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or

reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without GlassRatner's prior approval (which shall not be unreasonably withheld), except as required by law.

6.   Conflicts.

GlassRatner is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware.   Because GlassRatner is a consulting firm that serves clients on an international basis in numerous cases, both in and out of court, it is possible that GlassRatner may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company.  In the event you accept the terms of this engagement, GlassRatner will not represent, and GlassRatner has not represented, the interests of any such entities or people in connection with this matter.

7.   Confidentiality / Non-Solicitation.

The CRO and GlassRatner shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (I) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement.  All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8.   Hold Harmless.

The Company shall hold harmless GlassRatner and the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company' bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to GlassRatner and the CRO.  The CRO shall be covered as an officer under the Company's existing director and officer liability insurance policies.  The Company shall also maintain any such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder.  The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination.  The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Company' charter, bylaws, or other organizational documents or policies shall affect the CRO's or GlassRatner's rights hereunder.

9.   Miscellaneous.

This Agreement shall (together with the attached indemnity provisions) be:  (a) governed and construed in accordance with the laws of the State of California, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto.  The Company and GlassRatner agree to waive trial by jury in any action, proceeding

or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or GlassRatner hereunder.

10.    Mike Issa as Officer of the Company.

Notwithstanding anything herein to the contrary, GlassRatner hereby agrees that, without the consent of the Board of Directors of the Company, GlassRatner will not substitute any party for Mike Issa to serve as CRO of the Company; provided, however, that nothing herein shall prohibit GlassRatner from staffing its engagement with the Company with personnel in addition to Mike Issa as needed to effectively manage the case.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC,** a Georgia limited liability company

By: _____
J. Michael Issa
Principal

Accepted and Agreed:

EARTHONE TECHNOLOGIES CORPORATION

By:_____
Name:_____
Title:_____

or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or GlassRatner hereunder.

10.    <u>Mike Issa as Officer of the Company</u>.

Notwithstanding anything herein to the contrary, GlassRatner hereby agrees that, without the consent of the Board of Directors of the Company, GlassRatner will not substitute any party for Mike Issa to serve as CRO of the Company; provided, however, that nothing herein shall prohibit GlassRatner from staffing its engagement with the Company with personnel in addition to Mike Issa as needed to effectively manage the case.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC,** a Georgia limited liability company

By:_____
          J. Michael Issa
          Principal

Accepted and Agreed:

EARTHONE TECHNOLOGIES CORPORATION

By:_____
Name:    DOUG MOLYNEUX
Title:    SECRETARY

# Exhibit 2



## J. MICHAEL ISSA

**GlassRatner Advisory & Capital Group LLC**
19800 MacArthur Suite 820
Irvine, CA 92612
949 862-1595

### *EXPERIENCE*
**GlassRatner Advisory & Capital Group LLC**
*California Managing Principal*

GlassRatner is a national advisory firm with offices in a number of major cities. The firm received the award for Middle Market Turnaround Firm of the Year in 2013. Mr. Issa is the principal in charge of the firm's California practice. The firm and its principals have provided significant benefits to clients in many industries including automotive, manufacturing, distribution, healthcare, retailing, restaurants, professional practices, services, real estate, oil and gas, and construction. The firm has an extensive real estate consulting and capital raising operation as part of its practice. The firm's services to its clients have been diverse, and have included the following:

- Mr. Issa and his team have raised various types of equity financing and joint venture participations on behalf of their clients. One of Mr. Issa's 2012 transactions received a major category award in 2013 at the Atlas Turnaround Event. Mr. Issa also won the M&A Advisors Award for Middle Market Retailing Deal of the Year in 2005.
- Mr. Issa has advised a number of investors on acquisitions of assets including portfolios of distressed assets from banks.
- As a part of crisis management for their clients, the firm frequently engages in debt restructuring. Mr. Issa has personally managed several billion dollars of debt restructuring on behalf of his clients and has been Chief Restructuring Officer for many of California's residential, office and retail developers, including some of the largest restructurings and bankruptcies in the last two real estate cycles. He has served as a Chapter 11 Bankruptcy Trustee in the Central District of California as well as in other Court appointed fiduciary capacities.
- Mr. Issa is a well-known authority on corporate operations, including working in interim management capacities. Services provided to his clients have included debt restructuring including CRO, bankruptcy advisory, capital raising, M&A and financial and operational turnaround.
- Mr. Issa has also been a court-appointed liquidating trustee of portfolios of real property and of operating companies. He chaired the strategic disposition committee of a public hotel company when the company's assets were sold off in a nine-digit transaction to another public hotel company.
- Mr. Issa and other GlassRatner professionals frequently appear as expert witnesses in litigation matters. These matters frequently involve testimony in the context of corporate, partnership, or individual bankruptcies. Examples of such testimonies include Plan Feasibility at Bankruptcy Confirmation Hearings, testimony in Use of Cash Collateral Hearings, company and asset liquidation analysis, adequacy of New Value, and a variety

ATLANTA | CHICAGO | IRVINE | MIAMI | NEW YORK | TAMPA

19800 MacArthur Blvd. Suite 820 | Irvine, CA 92612 | Tel 949-429-4288 | Fax: 949-743-0333 | www.glassratner.com

Exhibit 2, Page 35

of financing and recapitalization issues. Mr. Issa and the firm also appear as expert witnesses in a variety of other non-bankruptcy litigation matters.

**Ballenger Cleveland & Issa, LLC** with offices in Los Angeles and Irvine
*Executive Managing Director and Cofounder*
Mr. Issa's Orange County practice of Ballenger Cleveland & Issa, LLC merged with GlassRatner in November 2010. The array of services outlined above was substantially the same at both BCI and GlassRatner.

**KIBEL GREEN ISSA, Inc**. with offices in Santa Monica and Irvine, Ca
*Vice Chairman, Managing Director of Orange County Practice*
Mr. Issa was the principal in charge of the firm's Orange County practice since the office opened in 1993. KGI was named one of the "12 Outstanding Turnaround Firms Nationally" by a nationwide industry publication during Mr. Issa's tenure.

### PREVIOUS WORK EXPERIENCE
Prior to his employment with KGI, Mr. Issa was the head of a group of companies, which were privately owned by several high net-worth, individual investors whose primary business was to acquire and turnaround problem assets including both operating companies and real property. After completing graduate school, Mr. Issa worked as a commercial banker with a regional bank and a money center bank for a total of five years. Subsequent to his banking career, Mr. Issa was the chief financial officer for a privately held company with diverse investments in operating companies, oil and gas assets and real estate.

### OTHER QUALIFICATIONS
**Education:**
Mr. Issa is a Beta Gamma Sigma Master of Business Administration from the University of Texas at Austin. He also received a Bachelor of Business Administration from the same institution. Mr. Issa has also taught in the business schools at two different four-year universities.

**Boards:**
Mr. Issa has served on the boards of both public and private companies as well as various non-profit organizations. He has also served on or chaired a number of strategic, financial and operating committees for these companies.

**Licenses and Professional Designations:**
Mr. Issa is a Certified Public Accountant (inactive); a frequent court-appointed fiduciary including roles as receiver, CRO and Bankruptcy Trustee in the Central District of California; holds a FINRA Series 65 license; and is a member of the following professional organizations: Orange County Bankruptcy Forum, Turnaround Management Association, and Urban Land Institute. He has also been included in the Nationwide Register's Who's Who in Executives and Businesses and speaks frequently at industry conferences on a variety of topics.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **MOTION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ENTRY OF AN ORDER, PURSUANT TO SECTIONS 363 AND 105(a) OF THE BANKRUPTCY CODE, AUTHORIZING AND APPROVING THE DEBTOR'S RETENTION OF J. MICHAEL ISSA AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DOUG MOLYNEUX AND J. MICHAEL ISSA IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On July 13, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on July 13, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Attorney Service - Bin by 5th Floor elevators**
Honorable Catherine E. Bauer
Ronald Reagan Federal Bldg.
411 W. Fourth St., Suite 5165
Santa Ana, CA 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| July 13, 2017 | PJ Marksbury | /s/ PJ Marksbury |
| Date | Printed Name | Signature |

-29-

MAINDOCS-#229793-v1-EarthOne_Motion_to_Employ_Issa_as_CRO

## NEF SERVICE LIST

- Frank Cadigan    frank.cadigan@usdoj.gov
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;Brian@lesliecohenlaw.com
- Lawrence J Hilton    lhilton@onellp.com,
  lthomas@onellp.com;info@onellp.com;evescance@onellp.com;crodriguez@onellp.com;rwenzel@onellp.com
- Andrew B Levin    alevin@winthropcouchot.com,
  bayrelevin@hotmail.com;pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Queenie K Ng    queenie.k.ng@usdoj.gov
- Robert E Opera    ropera@winthropcouchot.com, pj@winthropcouchot.com;vcorbin@winthropcouchot.com
- Donald Reid    dreid@goeforlaw.com, kmurphy@goeforlaw.com;goeforecf@gmail.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

MAINDOCS-#229793-v1-EarthOne_Motion_to_Employ_Issa_as_CRO